# EXHIBIT 16



# The Effects of Aging on Recidivism Among Federal Offenders

**UNITED STATES SENTENCING COMMISSION**



**United States Sentencing Commission**

One Columbus Circle, N.E.
Washington, DC 20002
www.ussc.gov

**William H. Pryor, Jr.**
*Acting Chair*

**Rachel E. Barkow**
*Commissioner*

**Charles R. Breyer**
*Commissioner*

**Danny C. Reeves**
*Commissioner*

**Zachary C. Bolitho**
*Ex Officio*

**J. Patricia Wilson Smoot**
*Ex Officio*



**Kenneth P. Cohen**
*Staff Director*

**Glenn R. Schmitt**
*Director*
*Office of Research and Data*

December 2017

2

**Kim Steven Hunt, Ph.D.,** *Senior Research Associate, Office of Research and Data*

**Billy Easley II, J.D.,** *Legislative Affairs Specialist, Office of Legislative and Public Affairs*

**TABLE OF CONTENTS**

| Part One | Part Two | Part Three | Part Four |
|---|---|---|---|
| EXECUTIVE SUMMARY | DEFINING AND MEASURING RECIDIVISM | INTRODUCTION TO AGE AND RECIDIVISM AMONG FEDERAL OFFENDERS | CHARACTERISTICS OF RECIDIVISM STUDY GROUP |
| 1 | 5 | 9 | 13 |

| Part Five | Part Six | Part Seven | Part Eight |
|---|---|---|---|
| RECIDIVISM RATES AMONG FEDERAL OFFENDERS BY AGE | CONCLUSION | ENDNOTES | APPENDIX |
| 21 | 29 | 33 | 37 |

# Part One

---

## *Executive Summary*



Part One:
**EXECUTIVE SUMMARY**

## Introduction

The United States Sentencing Commission[1] began studying recidivism shortly after the enactment of the Sentencing Reform Act of 1984 ("SRA"), and has issued several recent publications examining recidivism rates among federal offenders released in 2005.  The Commission's first report in this series, *Recidivism Among Federal Offenders: A Comprehensive Overview* ("*Recidivism Overview Report*"), was released in March 2016 and discussed this research project in greater detail.  As noted in the previous reports in this series,[2] recidivism information is central to three of the primary purposes of punishment described in the SRA—specific deterrence, incapacitation, and rehabilitation—all of which focus on prevention of future crimes through correctional intervention. Information about recidivism is also relevant to the Commission's obligation to formulate sentencing policy that "reflect[s], to the extent practicable, advancements in knowledge of human behavior as it relates to the sentencing process."[3] Considerations of recidivism by federal offenders were also central to the Commission's initial work in developing the *Guidelines Manual*'s criminal history provisions[4] as well as its ongoing work.[5]

The Commission's current recidivism research substantially expands on the scope of previous Commission recidivism projects.  In addition to a different set of offenders—U.S. citizen federal offenders released in 2005—the current study group (25,431 offenders) is much larger than those in previous Commission studies. A larger study group allows for data analysis across many different subgroups of federal offenders, including those sentenced under different provisions in the guidelines.

This report is the fourth in this series and focuses on the relationship between age at release and recidivism.  This report examines the impact of the aging process on federal offender recidivism and, once age is accounted for, the impact of other offense and offender characteristics.

## Key Findings

The key findings of the Commission's study of federal offenders' recidivism by age at release are that:

- Older offenders were substantially less likely than younger offenders to recidivate following release.  Over an eight-year follow-up period, 13.4 percent of offenders age 65 or older at the time of release were rearrested compared to 67.6 percent of offenders younger than age 21 at the time of release.  The pattern was consistent across age groupings, and recidivism measured by rearrest, reconviction, and reincarceration declined as age increased.

- For federal offenders under age 30 at the time of release, over one-fourth (26.6%) who recidivated had assault as their most common new charge.  By comparison, for offenders 60 years old or older at the time of release, almost one quarter (23.7%) who recidivated had a public order offense[6] as their most serious new charge.

- Age and criminal history exerted a strong influence on recidivism. For offenders in Criminal History Category I, the rearrest rate ranged from 53.0 percent for offenders younger than age 30 at the time of release to 11.3 percent for offenders age 60 or older.  For offenders in Criminal History Category VI, the rearrest rate ranged from 89.7 percent for offenders younger than age 30 at the time of release to 37.7 percent for offenders age 60 or older.

- Education level influenced recidivism across almost all categories.  For example, among offenders under age 30 at the time of release, college graduates had a substantially lower rearrest rate (27.0%) than offenders who did not complete high school (74.4%).  Similarly, among offenders age 60 or older at the time of release, college graduates had a somewhat lower rearrest rate (11.6%) than offenders who did not complete high school (17.2%).

- Age exerted a strong influence on recidivism across all sentence length categories.  Older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed.  In addition, for younger offenders there was some association between the length of the original federal sentence and the rearrest rates, as younger offenders with sentences of up to six months generally had lower rearrest rates than younger offenders with longer sentences.  However, among all offenders sentenced to one year or more of imprisonment, there was no clear association between the length of sentence and the rearrest rate.

- For certain major offense types, the type of federal offense that offenders had committed also had an effect on recidivism across age groups.  For example, firearms offenders had a substantially higher rearrest rate across all age categories than drug trafficking offenders, who in turn had a higher rearrest rate across all age categories than fraud offenders.  For example, for offenders under age 30 at the time of release, the rearrest rates were 79.3 percent (firearms), 62.5 percent (drug trafficking), and 53.6 percent (fraud).  Similarly, for offenders age 60 and older at the time of release, the rearrest rates were 30.2 percent (firearms), 17.5 percent (drug trafficking), and 12.5 percent (fraud).

- At every age group, federal prisoners had a substantially lower recidivism rate than state prisoners who also were released in 2005 and tracked by the Bureau of Justice Statistics. For example, for offenders age 24 or younger at the time of release, 63.2 percent of federal prisoners were rearrested within five years compared to over four-fifths (84.1%) of state prisoners. Like federal prisoners, older state prisoners were less likely to recidivate than younger state prisoners.

# Part Two

---

## *Defining and Measuring Recidivism*



Part Two:
**DEFINING AND MEASURING RECIDIVISM**

## Defining and Measuring Recidivism

Recidivism "refers to a person's relapse into criminal behavior, often after the person receives sanctions or undergoes intervention for a previous crime."[7] Measuring recidivism informs decision making about issues such as pretrial detention, appropriate sentence type and length, prisoner classification, prison programming, and offender supervision in the community. It also allows policymakers to evaluate the performance of the criminal justice system as a whole.[8] Recidivism is typically measured by criminal acts that resulted in the rearrest, reconviction, and/or reincarceration of the offender over a specified period of time. These are the three recidivism measures used in this report, but the report primarily relies on the first—rearrest—with additional data regarding reconviction and reincarceration reported in the Appendix. Providing data about multiple measures of recidivism allows users to select the performance measure best suited to their outcome of interest.

Rearrest classifies a person as a recidivist if he or she has been arrested for a new crime after being released into the community directly on probation or after serving a term of imprisonment. Rearrest also includes arrests for alleged violations of conditions of federal probation, federal supervised release, or state parole. The number of rearrests in the Commission's analysis is based on the number of unique arrest dates, regardless of the number of individual charges arising from a single arrest event. Thus, if an offender was arrested on a single occasion for both driving under the influence and possession of cocaine, that arrest date would constitute a single rearrest event.

Reconviction classifies a person as a recidivist if an arrest resulted in a subsequent judicial conviction.[9] Violations and revocations of supervision are not included in reconvictions since no formal prosecution occurred. While states have improved the completeness of their criminal history records, a recent federal study found significant gaps in reporting of dispositions following an arrest.[10] Such gaps occurred in the criminal records used in this report, and lead to an undercounting of reconvictions, because missing dispositions for rearrests are treated as if reconviction and reincarceration did not occur.

Reincarceration classifies a person as a recidivist if a conviction or revocation resulted in a prison or jail sentence as punishment. The reincarceration measure counts offenders who were reported as being incarcerated by the Federal Bureau of Prisons, state prison, or local jail for any term of incarceration based on their recidivism events. Incomplete criminal records also create missing information about reincarceration.[11]

Many rearrests do not ultimately result in a reconviction or reincarceration for reasons relating to procedural safeguards (*e.g.*, the suppression of evidence for an unconstitutional search or seizure), lack of sufficient evidence to convict or revoke, and prosecutorial or judicial resource limitations. To the extent that the rearrest event is an accurate indicator of relapse into criminal behavior, excluding non-conviction or non-incarceration events will result in underestimation of recidivism. Even using the least restrictive measure, rearrest, does not count the full extent of offender recidivism, as many crimes go unreported to police or, if reported, do not result in an arrest. For these reasons, no measure is perfect, and reporting several measures provides a more complete and nuanced picture of recidivism. The three measures overlap in some areas—meaning all offenders who were reconvicted or reincarcerated also were necessarily rearrested. Some offenders who were reconvicted, however, were not reincarcerated. Generally speaking, however, the measure of rearrest is larger than the measure of reconviction, which in turn is larger than the measure of reincarceration.

In undertaking its current recidivism research, the Commission selected a follow-up period of eight years. It considered all recidivism events (including felonies, misdemeanors, and "technical" violations of the conditions of supervision), except minor traffic offenses, which occurred over that eight-year period. While this report includes summary findings using all three measures (rearrest, reconviction, and reincarceration), it primarily relies on rearrest data in providing more detailed information about the recidivism of federal offenders.

**13**

# Part Three

*Introduction to Age and Recidivism Among Federal Offenders*



Part Three:
**INTRODUCTION TO AGE AND RECIDIVISM AMONG FEDERAL OFFENDERS**

## Age and Recidivism Among Federal Offenders

This report examines the impact of the aging process on recidivism by federal offenders.  First, recidivism rates are presented by age at release.  Next, the time to the first recidivism event is shown by age at release for those offenders who recidivated.  Studying the timing of recidivism can help in understanding the process of desistance across various age cohorts.  The number of recidivism events and most serious type of post-release offense among those who recidivated by age at release are also discussed.  Contrasting the number and nature of crimes committed across age groups may reveal more information about the threat to public safety posed by various age groups as well as the process of desisting from crime across the aging process.

The report then investigates the association between recidivism and factors such as criminal history, demographic factors, offense characteristics, and sentence length.  This information is reported by age group in order to better distinguish the impact of these factors while controlling for age at release.

As first noted in the *Recidivism Overview Report*, numerous recidivism studies document well that older offenders are at lower risk for reoffending,[12] and the Commission's own research has confirmed this finding for federal offender populations.[13]  The Commission's study found that among all federal offenders released into the community in 2005, those who were below age 21 at release had the highest rearrest rate at over two-thirds (67.6%).  Conversely, those oldest at age of release, over 60 years old, had the lowest recidivism rate (16.0 %).   For each age grouping shown in the previous report, the older the age group, the lower the rearrest rate.  The same pattern held for reconviction and reincarceration rates.

According to the National Institute of Justice, "the prevalence of offending tends to increase from late childhood, peak in the teenage years (from 15 to 19) and then decline in the early 20s."[14]  Scholars have used official arrest data collected by the Federal Bureau of Investigation (FBI) to construct an age-crime curve[15] which demonstrates graphically the relationship between age and arrests.  National arrest data collected by the FBI in the Uniform Crime Report (UCR) since 1930[16] and compiled in the FBI's *Crimes in the United States* report since 1995[17] has consistently supported this conclusion concerning age and crime.

Figure 1 shows a comparison of arrests by five-year age intervals beginning at age 20 for all 2016 U.S. arrests reported to the FBI and all adult arrests reported in criminal history records provided by the FBI for federal offenders released in 2005, by identical age groupings.[18]  To construct the federal offender data, the Commission aggregated all arrest incidents from the federal offenders' entire criminal history as reported on state and federal records.[19]  That is, each arrest charge is collected and grouped by the age of the offender at the time of that arrest, in the same manner as set forth in Table 20 of the *2016 Crimes in the United States* report.

Figure 1 demonstrates the close tie between older age and declining arrests, in both the FBI's UCR[20] and prior arrest data obtained on federal offenders from the FBI's Interstate Identification Index (III) system, which is a national index of criminal histories.  In general, the Commission found that total adult arrests for federal offenders were highest in the 20-24 age group, and declined sharply thereafter.  The national FBI adult arrests in 2016 display the same pattern.

For both federal offenders' prior arrest history and national 2016 arrests as reported by the FBI, older age groups had fewer arrests.  While there are vast differences among individuals which are not explained by age, age is generally a strong factor influencing the likelihood of committing crime, although the reasons for this are complex.[21]

Since arrests are closely associated with age, it is not surprising that federal offenders who enter and exit the federal system at younger ages are more prone to recidivate.  In the following sections, this report examines the age and recidivism connection in greater detail.  Then this report analyzes age in combination with other offense and offender characteristics.  This combination in effect statistically controls for age and reveals the influence, or absence of influence, of other factors which may be thought to impact recidivism over and above the influence of aging.

*Fig. 1* **Total Arrests by Age**
**All 2016 U.S. Arrests Compared to Recidivism Study Offenders' Arrest Records**



**2016 Crime in the United States (FBI) Arrests by Age**

**Lifetime Arrests by Federal Offenders Released in 2005**

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT and U.S. Department of Justice, Federal Bureau of Investigation Uniform Crime Report, *Crime in the United States* (2015). The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.

**17**

# Part Four

---

## *Characteristics of Recidivism Study Group*

## Characteristics of Recidivism Study Group

This report examines 25,431 offenders who were released into the community (either from federal prison or on to probation) in calendar year 2005 and, as discussed in the *Recidivism Overview Report*, were federal offenders:

- who are citizens;
- who re-entered the community after discharging their sentences of incarceration or by commencing a term of probation in 2005;
- whose pre-sentence investigation report was submitted to the Commission;
- who have valid FBI numbers which could be located in criminal history repositories (in at least one of the 50 states, DC, or federal records);
- who were not reported dead, escaped, or detained; and
- whose federal sentence was not vacated.

The advantages of this large study group are substantial. Having several thousand offenders allows more precise estimates of recidivism rates across different subgroups. For example, there are 1,048 released offenders who were older than 60 years of age.

*Offender Demographics*

The largest age cohort in this study was those offenders aged 30 to 34 (18.3% of the total) at the time they were released from federal custody into the community (Figure 2). The next largest cohorts at time of release were offenders aged 25 to 29 (16.4%) and 35 to 39 (15.3%).

Among the racial and ethnic groups analyzed, most White offenders were 40 years or older (51.6%) at the time of their release (Figure 3). This is the only racial group in the study with more than half of offenders over the age of 40. Black and Hispanic offenders were concentrated in the younger than 40 age cohorts, with Hispanic offenders the youngest of all racial groups (70.9% were younger than 40 at the time of release). The Other race category, which includes American Indians, Alaskan Natives and Asians were also mostly below age 40 (62.9%).

***Fig. 2* Age at Release for Recidivism Study Offenders**

60 to 64 Years 2.6% (n=668)
65 Years or Older 2.1% (n=536)
Younger than 21 Years 1.6% (n=398)
55 to 59 Years 4.9% (n=1,235)
21 to 24 Years 8.8% (n=2,234)
50 to 54 Years 6.8% (n=1,734)
25 to 29 Years 16.4% (n=4,164)
45 to 49 Years 10.1% (n=2,569)
40 to 44 Years 13.1% (n=3,325)
30 to 34 Years 18.3% (n=4,635)
35 to 39 Years 15.3% (n=3,888)

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis. Totals may not sum to 100.0% due to rounding.

***Fig. 3* Race of Recidivism Study Offenders by Age at Release**

White n=11,074
60 Years or Older 7.6%
Younger than 30 Years 20.5%
50 to 59 Years 16.2%
40 to 49 Years 27.8%
30 to 39 Years 27.9%
Black n=8,607
50 to 59 Years 8.4%
60 Years or Older 2.2%
Younger than 30 Years 28.0%
40 to 49 Years 19.6%
30 to 39 Years 41.9%
Hispanic n=4,508
60 Years or Older 2.8%
50 to 59 Years 7.5%
Younger than 30 Years 38.0%
40 to 49 Years 18.7%
30 to 39 Years 32.9%
Other n=1,174
60 Years or Older 3.9%
50 to 59 Years 9.3%
Younger than 30 Years 34.2%
40 to 49 Years 23.9%
30 to 39 Years 28.7%

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis. Totals may not sum to 100.0% due to rounding.

The average age of offenders at the time of release increased as educational level increased (Figure 4).  Offenders who did not complete high school were the youngest group at the age of release, with 68.5 percent below the age of 40. College graduates were significantly older on average than offenders in other educational cohorts, with around 71.0 percent of college graduates age 40 or older.

Female offenders were slightly younger on average than male offenders at the time of release (Figure 5).  Specifically, a greater proportion of female offenders were younger than 30 at the time of release, 31.2 percent, compared to 25.8 percent of male offenders.

*Fig. 4* Education of Recidivism Study Offenders by Age at Release



*Fig. 5* Gender of Recidivism Study Offenders by Age at Release





Part Four:
**CHARACTERISTICS OF RECIDIVISM STUDY GROUP**

*Federal Offense Type and Criminal History*

Drug trafficking offenders were generally the youngest group of offenders at the time of release (Figure 6). Of all drug trafficking offenders, 68.0 percent were below the age of 40. By comparison, 66.5 percent of firearms offenders and 60.3 percent of robbery offenders were below the age of 40. Fraud offenders were the oldest group with 55.0 percent age 40 or older at the time of release.

Over two-thirds (67.0%) of offenders subject to weapons enhancements were younger than age 40 at the time of release compared to 59.6 percent of offenders who were not subject to such enhancements (Figure 7).

*Fig.* 6 Primary Offense Type of Recidivism Study Offenders by Age at Release



*Fig.* 7 Weapon Enhancement of Recidivism Study Offenders by Age at Release



Overall, the age of offenders increased as the offenders' prior criminal history increased (Figure 8).  A federal offender's prior criminal history score is calculated under Chapter Four of the *Guidelines Manual* and assigned one of six Criminal History Categories (CHC), CHC I through VI, with CHC VI being the highest prior record category.[22]  Category I had a larger proportion of offenders younger than 30 years (27.8%) than Category VI (11.1%).[23]  Conversely, Category VI had the largest group of offenders age 40 or older (47.1%).

The offender's base offense level is determined by applying the Chapter Two guideline level associated with the conviction offense (Figure 9).  A high base offense level, defined as a base offense level of 32 or higher, was associated with a high percentage of offenders between the ages of 30 to 39.  Offenders between the ages of 30 to 39 were the only age group to increase consistently across all three categories as shown in Figure 9, from 29.8 percent to 45.4 percent.  Offenders younger than 30 reached a high of 31.2 percent in the base offense level 26 to 31 category but decreased to 18.1 percent among the most serious category of offenders with a base offense level between 32 and 43.

*Fig. 8* Criminal History Category of Recidivism Study Offenders by Age at Release



*Fig. 9* Base Offense Level of Recidivism Study Offenders by Age at Release





Part Four:
**CHARACTERISTICS OF RECIDIVISM STUDY GROUP**

*Sentences Imposed*

For statistical purposes, the Commission groups the type of federal sentence originally imposed into four categories: prison only, prison and community confinement, probation and confinement, and probation or fine only.[24] Prison only offenders were the youngest group at release in the Commission's study, with 61.9 percent of the offenders who received a prison only sentence under the age of 40 (Figure 10). Offenders who served prison and community confinement sentences were the oldest, with 48.1 percent age 40 or older.

The Commission also considered the length of the federal sentence imposed on those in the study group. Offenders serving the longest sentences were the oldest at time of release (Figure 11). For offenders who served a sentence of 120 months or more, the proportion of offenders who were age 40 or older at the time they were released was 48.6 percent, higher than any other group. In contrast, among offenders who served a sentence of 60 to 119 months, the proportion age 40 or older was 36.3 percent, the same proportion as offenders who served a sentence of 24 to 59 months.

*Fig. 10* Sentence Type of Recidivism Study Offenders by Age at Release



*Fig. 11* Length of Federal Sentence of Recidivism Study Offenders by Age at Release



**25**

# Part Five

---

## *Recidivism Rates Among Federal Offenders by Age*



Part Five:
**RECIDIVISM RATES AMONG FEDERAL OFFENDERS BY AGE**

## Recidivism Rates Among Federal Offenders by Age

The Commission found that younger offenders were more likely to be rearrested than older offenders, were rearrested faster than older offenders, and committed more serious offenses after they were released than older offenders.  As shown in Table 1, the Commission's research shows that the younger than 30 age group had the highest rearrest rate (64.8%) and the rate declined with each age group that follows to a low of 16.4 percent.  Younger cohorts had more arrest events during the eight-year follow-up period, a median of three arrest events for the younger than 30 age group compared to one event for those age 50 and older.

The Commission ranked new offenses in order of seriousness for those who reoffended.  The most serious type of offense likely to cause rearrest also varied by age, from assault (for all age groups under the age of 50) to public order offenses (for age groups 50 and older).

*Table 1* **Overview of Age and Recidivism Study Findings**
**Rearrest Recidivism Measure**

|  | Younger than 30 Years n=6,796 | 30 to 39 Years n=8,523 | 40 to 49 Years n=5,894 | 50 to 59 Years n=2,969 | 60 Years or Older n=1,204 |
|---|---|---|---|---|---|
| Percent | 64.8% | 53.6% | 43.2% | 26.8% | 16.4% |
| Median Time to Recidivism Event | 17 Months | 22 Months | 22 Months | 25 Months | 28 Months |
| Median Number of Recidivism Events | 3 | 2 | 2 | 1 | 1 |
| Most Serious Post-Release Event | Assault (26.6%, n=1,170) | Assault (24.1%, n=1,102) | Assault (20.3%, n=517) | Other Public Order Offense (22.5%, n=179) | Other Public Order Offense (23.7%, n=47) |

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.

Figure 12 identifies the median time of rearrest for each age cohort.  The measure of time to first recidivism event can be useful in distinguishing offenders who recidivate early from those who eventually recidivate, but are apparently crime-free for a longer interval.  The Commission found that the median amount of time between an offender's release and his or her rearrest, which is highlighted on each timeline, reflected the greater tendency for younger cohorts to recidivate.  Offenders who were younger than 30 when they were released had the shortest median time to rearrest (17 months).  Conversely, the oldest offenders in the study, those 60 years and older, had the longest time to rearrest (28 months).

*Fig. 12* **Time to First Rearrest of Recidivism Study Offenders**



SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.

Figure 13 presents a more detailed breakdown of rearrest rate by 11 age groups.  The Commission's study revealed that the rearrest rate was highest among offenders younger than 21 (67.6%) and those between the ages of 21 to 24 years old (66.6%) and declined in each subsequent age group.

**28**

**Fig. 13 Rearrest Rates for Recidivism Study Offenders by Age at Release**



SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.

The reconviction rate is highest among offenders younger than 21 (48.5%) and those between the ages of 21 to 24 years old (48.4%) and declined in each subsequent age group. Time to reconviction expanded with age and severity of reconviction offense declined with age, in a pattern like that shown with rearrest in Figure 14.[25]

**Fig. 14 Reconviction Rates for Recidivism Study Offenders by Age at Release**



SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.

**Fig. 15 Reincarceration Rates for Recidivism Study Offenders by Age at Release**



SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.

The reincarceration rate was highest among those between the ages of 21 to 24 years old (38.6%) and declined in each subsequent age group.[26] Time to reincarceration expands with age and severity of reincarceration offense declined with age, in a pattern like that shown with rearrest in Figure 15.[27]

*Demographics*

White offenders had the lowest rearrest rate overall, starting with 59.1 percent for the youngest age group and declining to a low of 15.7 percent in the 60 years or older age cohort (Figure 16 on the next page). Black offenders had the highest rearrest rate overall, starting with 72.7 percent in the youngest age cohort, which is the highest recidivism rate among all age categories. The other racial category, which includes American Indians, Alaskan Natives and Asians, had the second highest overall rearrest rate, starting with a 65.1 percent rearrest rate in the youngest age cohort before declining.

**29**



Part Five:
**RECIDIVISM RATES AMONG FEDERAL OFFENDERS BY AGE**

*Fig. 16 Rearrest Rate of Recidivism Study Offenders by Race and Age at Release*



The overall rearrest rate decreased with every step of educational achievement (Figure 17). Every education group experienced a decline in rearrest rates as age increases. Offenders who did not complete high school generally had the highest rearrest rates in all age categories compared to other educational cohorts, starting with a 74.4 percent rearrest rate in the youngest age cohort. College graduates had the lowest rearrest rates among the educational groups.

*Fig. 17 Rearrest Rate of Recidivism Study Offenders by Education and Age at Release*



Male offenders had a higher rearrest rate than female offenders in every age category (Figure 18). In the younger than 30 age cohort, men had a 69.5 percent rearrest rate compared to 47.6 percent for women. The rearrest rate declined for both male and female offenders with each subsequent age group.

*Fig. 18 Rearrest Rate of Recidivism Study Offenders by Gender and Age at Release*



*Federal Offense Type and Criminal History*

Offenders whose primary offense involved robbery or firearms had higher rearrest rates in all age categories (Figure 19). The Commission found that firearm offenders had a rearrest rate of 79.3 percent in the younger than 30 cohort, the highest rearrest rate among all sentencing types. Robbery offenders, unlike all other offense types, did not experience a continuous decline in rearrest rates as they aged. Instead, rearrest rates *increased* from the younger than 30 age cohort (66.2%) to the 40 to 49 age cohort (71.5%) before experiencing a sharp decline.

Rearrest rates decline with age across every base offense level group analyzed (Figure 20). Comparing similar age groups across base offense levels, the Commission found that the lowest base offense level group had a modestly higher recidivism rate across most age categories than those with higher base offense levels. For example, in the younger than 30 age cohort, those with base offense levels of 25 or lower had a 66.3 percent rearrest rate, somewhat higher than those offenders with base offense levels of 32 or higher (60.2%).

**Fig. 19 Rearrest Rate of Recidivism Study Offenders by Primary Offense Type at Sentencing and Age at Release**



SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.

**Fig. 21 Rearrest Rate of Recidivism Study Offenders by Weapon Enhancement and Age at Release**



SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.

Offenders with a weapon enhancement had a higher rearrest rate than offenders who did not across all age groups (Figure 21). For example, federal offenders who were younger than 30 and had a weapon enhancement had a rearrest rate of 70.2 percent compared to 64.2 percent for those younger than 30 without a weapon enhancement.

Rearrest rates increased with the Criminal History Category (CHC) of offenders across all age groups (Figure 22). For instance, offenders who were younger than 30 and in CHC I had a 53 percent rearrest rate, compared to 79.5 percent for that same age group in CHC III, and 89.7 percent for that same age group in CHC VI.

**Fig. 20 Rearrest Rate of Recidivism Study Offenders by Base Offense Level and Age at Release**



SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.

**Fig. 22 Rearrest Rate of Recidivism Study Offenders by Criminal History Category and Age at Release**



SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.



Part Five:
**RECIDIVISM RATES AMONG FEDERAL OFFENDERS BY AGE**

*Federal Sentence Imposed*

Offenders who received a prison only sentence had a higher rearrest rate than offenders who received a different form of sentence (Figure 23). For instance, offenders who received sentences of prison only and who were younger than 30 years of age had a rearrest rate of 68.6 percent compared to 53.6 percent for offenders in the same age group who received split sentences and 55.4 percent for offenders in the same age group who were sentenced to probation and confinement. Offenders younger than 30 who were sentenced to probation or fine only had a rearrest rate of 51.5 percent.

Rearrest rates declined with the age at release across all sentence lengths (Figure 24). For example, among offenders with imprisonment sentences up to six months, those younger than age 30 at release had the highest rearrest rate (52.7%) while offenders 60 years and older at release had the lowest rearrest rate (20.0%). In general, there was some association between the length of the original federal sentence and rearrest rates. Offenders with the shortest imprisonment sentences, of up to six months, had the lowest rearrest rates for four of the five age groups studied. Offenders with sentences of 120 months or longer had the highest rearrest rates for two of the age groups studied and among the highest rearrest rates for the remaining three age groups. Among all offenders sentenced to one year of imprisonment or longer, the association between sentence length and rearrest rates was less clear. For example, for offenders younger than 30 at release, the rearrest rate was approximately 70 percent regardless of the length of sentence imposed, ranging from 69.2 percent for offenders sentenced from 12 to 23 months of imprisonment to 68.1 percent for offenders sentenced to 120 months or longer, with the highest rearrest rate of 71.4 percent for offenders sentenced to 60 to 119 months.



**Fig. 23** Rearrest Rate of Recidivism Study Offenders by Type of Federal Sentence Imposed and Age at Release

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.



**Fig. 24** Rearrest Rate of Recidivism Study Offenders by Length of Federal Sentence and Age at Release

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.

To compare the federal offenders in this study to offenders released from state custody, the Commission compared the recidivism rates for prisoners in the Commission's recidivism cohort to a cohort of state prisoners released into the community in 2005 using a five-year follow-up period (Figure 25).[28]  As reflected in Figure 25, state prisoners had a higher rearrest rate than federal prisoners in every age category.  Also, the gap in the rearrest rate between state and federal prisoners increased with each age group.  Federal prisoners in the youngest age group had a 63.2 percent rearrest rate compared to 84.1 percent for state prisoners.  In the oldest age group, the rearrest rate declined to 32.5 percent for federal offenders compared to 69.2 percent for state prisoners.

*Fig. 25* Rearrest Rate of Recidivism Study Offenders for Federal and State Prisoners by Age at Release: Five Year Post Release



SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT and Bureau of Justice Statistics, *Recidivism of Prisoners Released in 30 States* (2005). The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.

# Part Six

---

*Conclusion*



Part Six:
**CONCLUSION**

## Conclusion

This is the fourth report in the Commission's ongoing recidivism study. This report examined the impact of the aging process on federal offender recidivism and the impact of other offense and offender factors once age is accounted for. The Commission found that older offenders are substantially less likely to recidivate following release compared to younger cohorts. Among offenders released younger than age 21, 67.6 percent were rearrested compared to 13.4 percent of those released age 65 or older. The pattern is consistent across age groups, as age increases recidivism by any measure declined. Older offenders who do recidivate do so later in the follow-up period, do so less frequently, and had less serious recidivism offenses on average.

The Commission found that age is not the only factor associated with recidivism. After accounting for age, criminal history as measured by the offenders' Criminal History Category was closely correlated with recidivism rates. Demographic factors including gender (males had higher rates), race and ethnicity (minorities had higher rates), and education levels (those with lower education levels had higher rates) also stood out. Other factors found to be associated with recidivism rates after accounting for age include sentence length for offenders less than age 50: the shortest lengths are associated with less recidivism up to sentences of one year, beyond which recidivism rates level off. Some offense characteristics, in particular primary federal offense (firearms and robbery, for example) and weapon enhancement, are associated with higher recidivism rates.

The Commission will issue additional reports in this recidivism study series in the coming months.

**37**

# Part Seven

---

## *Endnotes*



**Endnotes**

## Endnotes

1       The United States Sentencing Commission is an independent agency in the judicial branch of government.  Established by the Sentencing Reform Act of 1984, its principal purposes are (1) to establish sentencing policies and practices for the federal courts, including guidelines regarding the appropriate form and severity of punishment for offenders convicted of federal crimes; (2) to advise and assist Congress, the federal judiciary, and the executive branch in the development of effective and efficient crime policy; and (3) to collect, analyze, research, and distribute a broad array of information on federal crime and sentencing issues.  *See* 28 U.S.C. §§ 995(a)(14), (15), (20).

2       *See* U.S. Sentencing Comm'n, Recidivism Among Federal Offenders: A Comprehensive Overview (2016) [hereinafter Recidivism Overview Report], https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf; U.S. Sentencing Comm'n, Recidivism Among Federal Drug Trafficking Offenders (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170221_Recidivism-Drugs.pdf; and U.S. Sentencing Comm'n, The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf.

3       28 U.S.C. § 991(b)(2).

4       *See* U.S. Sentencing Comm'n, Supplementary Report On The Initial Sentencing Guidelines And Policy Statements 41–44 (1987), https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/1987/manual-pdf/1987_Supplementary_Report_Initial_Sentencing_Guidelines.pdf [hereinafter "Supplementary Report"].

5       *See, e.g.*, U.S. Sentencing Comm'n, Recidivism Among Offenders Receiving Retroactive Sentencing Reductions: The 2007 Crack Cocaine Amendment (2014), https://www.ussc.gov/research/research-publications/recidivism-among-offenders-receiving-retroactive-sentencereductions-2007-crack-cocaine-amendment [hereinafter "Crack Cocaine Recidivism Report"] and U.S. Sentencing Comm'n, 2016 Report to the Congress: Career Offender Enhancements (2016), https://www.ussc.gov/research/congressional-reports/2016-report-congress-career-offender-enhancements.

6       Public order offenses include violations of conditions of federal probation, federal supervised release, or state parole and crimes such as obstruction of justice and failure to appear.

7       *See* Nat'l Institute of Justice, U.S. Dept. of Justice, Recidivism, https://web.archive.org/web/20160120175242/http://www.nij.gov/topics/corrections/recidivism/pages/welcome.aspx (Jan. 20, 2016).

8       *See* Recidivism Overview Report, *supra* note 2, at 7-8.

9       Revocations were not counted as reconvictions because the offenders were not convicted of a new offense (even if the basis for revocation was a "new law violation").  Offenders whose terms of supervision were revoked and who were sentenced to imprisonment were treated as having been reincarcerated.

10      *See* U.S. Gov't Accountability Office, Criminal History Records: Additional Actions Could Enhance The Completeness Of Records Used For Employment-Related Background Checks (2015), http://www.gao.gov/products/GAO-15-162.

11      *Id.*

12      *See* Recidivism Overview Report, *supra* note 2, at n.56.  The relationship between age and propensity to commit crime was first documented in 1842.  *See* Adolphe Quietelet, A Treatise On Man And The Development Of His Faculties (1842).  *See also*, https://www.nij.gov/topics/crime/Pages/delinquency-to-adult-offending.aspx.  For more recent discussion of the development of offending behavior, age-related risk factors, and the effects of life events on offending see D. P. Farrington, *Developmental and life-course criminology: Key theoretical and empirical issues. The 2002 Sutherland Award Address*, 41 Criminology 221–55 (2003).

13      *See* Recidivism Overview Report, *supra* note 2, at 23 (Figure 11).

14      https://www.nij.gov/topics/crime/Pages/delinquency-to-adult-offending.aspx.  However, different types of offenses peak at different ages, and individual propensities differ from aggregate totals.  *See* David P. Farrington, "Age and Crime," in 7 Crime And Justice: An Annual Review Of Research 189 (Michael Tonry & Norval Morris, eds., 1986).

15      Farrington, *supra*, at 191.

16      Federal Bureau of Investigation, Uniform Crime Report, (2017), https://ucr.fbi.gov/?came_from=https%3A//ucr.fbi.gov/word.

17      *See* Federal Bureau of Investigation, Crimes in the United States, https://ucr.fbi.gov/crime-in-the-u.s.

18      Prior record data on federal offenders includes arrests reported prior to their 2005 release as well as any arrests that may be reported post-2005, in other words the entire criminal record for federal offenders available at the time of Interstate Identification Index (III) data collection.  In contrast, all the 2016 U.S. arrests are a snapshot of a single year for all offenses in the United States cleared through an arrest.  The comparison is therefore covering widely different time intervals, and is presented merely to suggest that the same general relationship of age and arrests holds true for federal offenders as for all offenders arrested in 2016.  While 2016 U.S. arrest data is available for juvenile arrests, state reporting in III on juveniles is often unavailable, requiring this comparison to adults only.  To put the comparison on the same scale, five-year intervals were chosen, beginning with the interval from age 20 through 24.

19      For example, if an offender is reported arrested for two charges at age 20 and one charge at age 25, that offender adds two incidents to the age 20-24 group and one to the age 25-29 group.

20      *See* Federal Bureau of Investigation, Crimes in the United States 2016, at Table 20, Arrests by Age 2016, https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/topic-pages/tables/table-20.

21      There are many theories attempting to explain this aggregate pattern of rising crime through teenage years followed by steady decline at some point after age 20.  The age-crime curve

captures both the prevalence of offending (the number of people committing a criminal act) and the incidence (number of criminal acts those people commit). There is no single well-established cause of offending, and contributing factors may be both biological (*e.g.*, brain functioning changes in transition from child to adult – *see* G. Sweeten, Alex Piquero, and L. Steinberg, *Age and the Explanation of Crime, Revisited*, 42 J. YOUTH AND ADOLESCENCE 921–38 (2013)) and sociological (*e.g.*, informal and formal bonds with others and with the community which may aggravate or deter offending). Travis Hirschi and Michael Gottfredson argued that the shape of the age-crime curve was similar across time and place, and largely unaffected by life events after childhood. Travis Hirschi and Michael Gottfredson, *Age and the Explanation of Crime*, 89 AM. J. SOCIOLOGY 552-84 (1983). They argue that individual differences are primarily explained by level of self-control and assert that the decline in adulthood is due primarily to reduced incidents of crime. On the other hand, Blumstein, Cohen, and Farrington assert that the decline in the aggregate age-crime curve is explained at least in part by the termination of criminal careers for most offenders by early adulthood. Alfred Blumstein, Jacqueline Cohen, and David P. Farrington, *Criminal Career Research: Its Value for Criminology*, 26 Criminology 1 (1988). That is, the rapid decline in the age-crime curve reflects desistance from crime. Sampson and Laub document termination in criminal careers for a sample of offenders and the mechanisms which foster the turn away from crime. *See* ROBERT SAMPSON AND JOHN H. LAUB, CRIME IN THE MAKING: PATHWAYS AND TURNING POINTS THROUGH LIFE (1993) (expanding on adult choice making, arguing that different choices taken over the adult life course, especially good marriages and other positive turning points over the life course help explain desistance from crime.) Therefore, the decline in the aggregate age-crime curve may be attributable to former offenders who have made the necessary life course changes. *See* Ray Paternoster and Shawn Bushway, *Desistance and the Feared Self: Toward an Identity Theory of Criminal Desistance*, 99 J. CRIM. L. & CRIMINOLOGY (2006) (that desistance from crime is a choice, that offenders who previously identified with a criminal lifestyle and criminal associates may begin to find the costs of this commitment exceeded by the benefits, providing a motivation to change their lives and associates and desist from crime).

22      For more information on how an offender's criminal history is addressed under the sentencing guidelines, see U.S. SENTENCING COMM'N, *Guidelines Manual*, Ch. 4 (Nov. 2016) [hereinafter USSG].

23      For more information on the relationship between CHC and recidivism see U.S. SENTENCING COMM'N, THE PAST PREDICTS THE FUTURE: CRIMINAL HISTORY AND RECIDIVISM OF FEDERAL OFFENDERS, *supra* note 2.

24      These four different sentence types correspond to the four "Zones" (A-D) in the Sentencing Table in the *Guidelines Manual*. *See* USSG, *supra* note 22, at Ch. 5, Pt. A (Sentencing Table); *see also* USSG §§5B1.1 & 5C1.1 (setting forth the sentencing options for Zones A-D). Zone A authorizes probation only; Zone B authorizes probation with a condition of confinement; Zone C authorizes a "split" sentence of imprisonment and community confinement (*e.g.*, home detention or a halfway house); and Zone D authorizes sentences of imprisonment only. *See* USSG §§5B1.1 & 5C1.1.

25      The shortest time to arrest leading to a reconviction (29 months) is attributed to the younger than 30 cohort and increases to 39 months in the last age group. The most serious type of offense most likely to cause reconviction also shifts with age from assault (for all age groups under the age of 50) to public order offenses (for age 50 to 59) or drug trafficking (for age 60 or older).

26      One exception occurs with reincarceration. Those under age 21, a small group, have a slightly lower rate of reincarceration (35.7%) compared to those between ages 21 and 24 (38.6%).

27      The shortest time to arrest leading to reincarceration (29 months) is attributed to the younger than 30 cohort and increases to 51 months in the last age group. The most serious type of offense most likely to cause reincarceration also shifts with age from assault (for all age groups under the age of 50) to public order offenses (for age 50 to 59) or drug trafficking (for age 60 or older).

28      MATTHEW DUROSE, ALEXIA COOPER, AND HOWARD SNYDER, BUREAU OF JUSTICE STATISTICS, U.S. DEP'T OF JUSTICE, RECIDIVISM OF PRISONERS RELEASED IN 30 STATES IN 2005: PATTERNS FROM 2005 TO 2010 (2014), http://www.bjs.gov/content/pub/pdf/rprts05p0510.pdf.

# Part Eight

---

## *Appendix*



Part Eight:
**APPENDIX**

### Recidivism Rates of Recidivism Study Offenders by Race and Age at Release

|  | N | Rearrest % | Reconviction % | Reincarceration % |
|---|---|---|---|---|
| **Total** | 25,386 | 49.3% | 31.7% | 24.7% |
| **Under 30 Years of Age** | | | | |
| **Race** | | | | |
| White | 2,265 | 59.1% | 40.8% | 31.1% |
| Black | 2,410 | 72.7% | 51.4% | 40.7% |
| Hispanic | 1,714 | 61.2% | 40.2% | 31.9% |
| Other | 401 | 65.1% | 49.1% | 44.1% |
| **30-39 Years of Age** | | % | % | % |
| **Race** | | | | |
| White | 3,090 | 48.9% | 31.9% | 24.2% |
| Black | 3,604 | 59.9% | 36.4% | 28.0% |
| Hispanic | 1,485 | 48.7% | 31.3% | 24.7% |
| Other | 337 | 50.5% | 35.0% | 27.9% |
| **40-49 Years of Age** | | % | % | % |
| **Race** | | | | |
| White | 3,076 | 39.4% | 25.7% | 19.1% |
| Black | 1,688 | 52.2% | 30.9% | 24.2% |
| Hispanic | 843 | 39.2% | 22.5% | 17.4% |
| Other | 281 | 42.0% | 27.1% | 23.8% |
| **50-59 Years of Age** | | % | % | % |
| **Race** | | | | |
| White | 1,797 | 23.7% | 12.7% | 9.9% |
| Black | 719 | 36.0% | 18.8% | 14.7% |
| Hispanic | 340 | 24.4% | 14.4% | 11.5% |
| Other | 109 | 22.9% | 11.9% | 9.2% |
| **60 Years of Age or Older** | | % | % | % |
| **Race** | | | | |
| White | 846 | 15.7% | 7.8% | 5.2% |
| Black | 186 | 19.4% | 15.6% | 12.9% |
| Hispanic | 126 | 19.1% | 10.3% | 7.9% |
| Other | 46 | 10.9% | 6.5% | 6.5% |

While states have improved the completeness of criminal history records, a recent federal study found significant gaps in reporting of dispositions following an arrest. Such gaps occur in the criminal records used in this report, and lead to an undercounting of reconvictions, since missing dispositions are treated herein as the absence of reconviction and reincarceration. *See* U.S. Government Accountability Office, Criminal History Records: Additional Actions Could Enhance the Completeness of Records Used for Employment-Related Background Checks (February 2015), http://www.gao.gov/products/GAO-15-162.

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT.  The numbers in the table represent the total number of offenders in each grouping, not the total number of offenders that recidivated. The total number of offenders in each grouping may not add to the total study group because of missing information.

### Recidivism Rates of Recidivism Study Offenders by Education and Age at Release

| | N | Rearrest % | Reconviction % | Reincarceration % |
|---|---|---|---|---|
| **Total** | 25,386 | 49.3% | 31.7% | 24.7% |
| **Under 30 Years of Age** | | | | |
| **Education** | | | | |
| Less Than High School | 3,067 | 74.4% | 53.2% | 43.6% |
| High School Graduate | 2,412 | 62.9% | 43.0% | 33.1% |
| Some College | 1,170 | 47.3% | 29.7% | 21.1% |
| College Graduate | 111 | 27.0% | 16.2% | 11.7% |
| **30-39 Years of Age** | | % | % | % |
| **Education** | | | | |
| Less Than High School | 2,849 | 63.0% | 40.9% | 32.8% |
| High School Graduate | 3,269 | 55.0% | 35.0% | 27.0% |
| Some College | 1,923 | 44.1% | 26.1% | 18.5% |
| College Graduate | 433 | 21.5% | 11.8% | 7.4% |
| **40-49 Years of Age** | | % | % | % |
| **Education** | | | | |
| Less Than High School | 1,679 | 51.5% | 30.9% | 24.0% |
| High School Graduate | 2,319 | 45.0% | 28.6% | 22.2% |
| Some College | 1,313 | 37.9% | 24.1% | 18.1% |
| College Graduate | 543 | 21.2% | 12.5% | 8.7% |
| **50-59 Years of Age** | | % | % | % |
| **Education** | | | | |
| Less Than High School | 698 | 31.0% | 18.2% | 14.6% |
| High School Graduate | 953 | 30.6% | 16.2% | 12.5% |
| Some College | 744 | 24.9% | 12.2% | 9.8% |
| College Graduate | 551 | 16.5% | 8.2% | 5.8% |
| **60 Years of Age or Older** | | % | % | % |
| **Education** | | | | |
| Less Than High School | 348 | 17.2% | 9.5% | 7.2% |
| High School Graduate | 356 | 18.8% | 11.2% | 7.9% |
| Some College | 249 | 16.1% | 8.4% | 6.0% |
| College Graduate | 241 | 11.6% | 5.8% | 4.2% |

While states have improved the completeness of criminal history records, a recent federal study found significant gaps in reporting of dispositions following an arrest. Such gaps occur in the criminal records used in this report, and lead to an undercounting of reconvictions, since missing dispositions are treated herein as the absence of reconviction and reincarceration. *See* U.S. Government Accountability Office, Criminal History Records: Additional Actions Could Enhance the Completeness of Records Used for Employment-Related Background Checks (February 2015), http://www.gao.gov/products/GAO-15-162.

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The numbers in the table represent the total number of offenders in each grouping, not the total number of offenders that recidivated. The total number of offenders in each grouping may not add to the total study group because of missing information.



Part Eight:
**APPENDIX**

### Recidivism Rates of Recidivism Study Offenders by Gender and Age at Release

| | N | Rearrest % | Reconviction % | Reincarceration % |
|---|---|---|---|---|
| **Total** | 25,386 | 49.3% | 31.7% | 24.7% |
| **Under 30 Years of Age** | | | | |
| **Gender** | | | | |
| Male | 5,342 | 69.5% | 48.6% | 39.2% |
| Female | 1,451 | 47.6% | 31.2% | 21.7% |
| **30-39 Years of Age** | | % | % | % |
| **Gender** | | | | |
| Male | 7,092 | 56.2% | 35.9% | 28.1% |
| Female | 1,427 | 40.7% | 23.7% | 15.8% |
| **40-49 Years of Age** | | % | % | % |
| **Gender** | | | | |
| Male | 4,783 | 46.4% | 29.1% | 22.8% |
| Female | 1,110 | 29.1% | 16.8% | 10.7% |
| **50-59 Years of Age** | | % | % | % |
| **Gender** | | | | |
| Male | 2,453 | 29.2% | 15.5% | 12.2% |
| Female | 516 | 15.3% | 8.7% | 6.4% |
| **60 Years of Age or Older** | | % | % | % |
| **Gender** | | | | |
| Male | 1,053 | 17.1% | 9.4% | 6.8% |
| Female | 150 | 12.0% | 8.0% | 6.0% |

While states have improved the completeness of criminal history records, a recent federal study found significant gaps in reporting of dispositions following an arrest. Such gaps occur in the criminal records used in this report, and lead to an undercounting of reconvictions, since missing dispositions are treated herein as the absence of reconviction and reincarceration. *See* U.S. Government Accountability Office, Criminal History Records: Additional Actions Could Enhance the Completeness of Records Used for Employment-Related Background Checks (February 2015), http://www.gao.gov/products/GAO-15-162.

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT.  The numbers in the table represent the total number of offenders in each grouping, not the total number of offenders that recidivated. The total number of offenders in each grouping may not add to the total study group because of missing information.

**Recidivism Rates of Recidivism Study Offenders by Primary Offense Type and Age at Release**

| | N | Rearrest % | Reconviction % | Reincarceration % |
|---|---|---|---|---|
| **Total** | 25,386 | 49.3% | 31.7% | 24.7% |
| **Under 30 Years of Age** | | | | |
| **Primary Offense Type** | | | | |
| Drug Trafficking | 3,110 | 62.5% | 41.2% | 31.7% |
| Firearms | 1,077 | 79.3% | 60.2% | 49.4% |
| Fraud | 511 | 53.6% | 36.4% | 25.1% |
| Robbery | 287 | 66.2% | 43.2% | 37.6% |
| All Other | 1,811 | 63.0% | 44.8% | 36.2% |
| **30-39 Years of Age** | | % | % | % |
| **Primary Offense Type** | | | | |
| Drug Trafficking | 4,078 | 52.0% | 31.5% | 23.7% |
| Firearms | 1,074 | 70.4% | 47.8% | 39.8% |
| Fraud | 1,037 | 41.8% | 26.1% | 18.4% |
| Robbery | 376 | 71.0% | 47.9% | 42.8% |
| All Other | 1,958 | 50.6% | 32.5% | 24.4% |
| **40-49 Years of Age** | | % | % | % |
| **Primary Offense Type** | | | | |
| Drug Trafficking | 2,151 | 42.3% | 24.5% | 18.4% |
| Firearms | 721 | 62.8% | 40.4% | 31.8% |
| Fraud | 977 | 31.8% | 19.2% | 13.4% |
| Robbery | 298 | 71.5% | 51.7% | 46.6% |
| All Other | 1,745 | 37.7% | 24.0% | 18.2% |
| **50-59 Years of Age** | | % | % | % |
| **Primary Offense Type** | | | | |
| Drug Trafficking | 952 | 26.8% | 14.1% | 11.5% |
| Firearms | 270 | 44.8% | 24.4% | 19.3% |
| Fraud | 618 | 19.7% | 10.4% | 7.8% |
| Robbery | 108 | 54.6% | 35.2% | 27.8% |
| All Other | 1,021 | 23.3% | 12.1% | 9.2% |
| **60 Years of Age or Older** | | % | % | % |
| **Primary Offense Type** | | | | |
| Drug Trafficking | 286 | 17.5% | 10.1% | 6.6% |
| Firearms | 96 | 30.2% | 20.8% | 15.6% |
| Fraud | 297 | 12.5% | 6.7% | 4.7% |
| Robbery | 29 | 34.5% | 13.8% | 13.8% |
| All Other | 496 | 14.5% | 7.7% | 5.9% |

While states have improved the completeness of criminal history records, a recent federal study found significant gaps in reporting of dispositions following an arrest. Such gaps occur in the criminal records used in this report, and lead to an undercounting of reconvictions, since missing dispositions are treated herein as the absence of reconviction and reincarceration. *See* U.S. Government Accountability Office, Criminal History Records: Additional Actions Could Enhance the Completeness of Records Used for Employment-Related Background Checks (February 2015), http://www.gao.gov/products/GAO-15-162.

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT.  The numbers in the table represent the total number of offenders in each grouping, not the total number of offenders that recidivated. The total number of offenders in each grouping may not add to the total study group because of missing information.



Part Eight:
**APPENDIX**

### Recidivism Rates of Recidivism Study Offenders by Base Offense Level and Age at Release

| | N | Rearrest % | Reconviction % | Reincarceration % |
|---|---|---|---|---|
| **Total** | 25,386 | 49.3% | 31.7% | 24.7% |
| **Under 30 Years of Age** | | | | |
| **Base Offense Level** | | | | |
| 6 to 25 | 4,682 | 66.3% | 46.9% | 37.4% |
| 26 to 31 | 1,393 | 62.3% | 41.4% | 31.2% |
| 32 to 43 | 716 | 60.2% | 38.7% | 31.2% |
| **30-39 Years of Age** | | % | % | % |
| **Base Offense Level** | | | | |
| 6 to 25 | 5,046 | 55.7% | 36.6% | 28.8% |
| 26 to 31 | 1,673 | 52.9% | 32.1% | 23.6% |
| 32 to 43 | 1,801 | 48.4% | 27.8% | 20.8% |
| **40-49 Years of Age** | | % | % | % |
| **Base Offense Level** | | | | |
| 6 to 25 | 4,073 | 44.3% | 28.0% | 21.8% |
| 26 to 31 | 901 | 43.8% | 26.1% | 19.8% |
| 32 to 43 | 913 | 37.1% | 21.9% | 15.8% |
| **50-59 Years of Age** | | % | % | % |
| **Base Offense Level** | | | | |
| 6 to 25 | 2,192 | 27.6% | 15.1% | 11.6% |
| 26 to 31 | 377 | 25.7% | 11.7% | 10.1% |
| 32 to 43 | 397 | 23.4% | 12.9% | 10.3% |
| **60 Years of Age or Older** | | % | % | % |
| **Base Offense Level** | | | | |
| 6 to 25 | 944 | 16.5% | 9.2% | 6.9% |
| 26 to 31 | 119 | 19.3% | 10.9% | 7.6% |
| 32 to 43 | 140 | 13.6% | 7.9% | 5.0% |

While states have improved the completeness of criminal history records, a recent federal study found significant gaps in reporting of dispositions following an arrest. Such gaps occur in the criminal records used in this report, and lead to an undercounting of reconvictions, since missing dispositions are treated herein as the absence of reconviction and reincarceration. *See* U.S. Government Accountability Office, Criminal History Records: Additional Actions Could Enhance the Completeness of Records Used for Employment-Related Background Checks (February 2015), http://www.gao.gov/products/GAO-15-162.

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT.  The numbers in the table represent the total number of offenders in each grouping, not the total number of offenders that recidivated. The total number of offenders in each grouping may not add to the total study group because of missing information.

### Recidivism Rates of Recidivism Study Offenders by Weapon Enhancement and Age at Release

| | N | Rearrest % | Reconviction % | Reincarceration % |
|---|---|---|---|---|
| **Total** | 25,386 | 49.3% | 31.7% | 24.7% |
| **Under 30 Years of Age** | | | | |
| **Weapon Enhancement** | | | | |
| No Weapon Enhancement | 6,136 | 64.2% | 44.4% | 34.9% |
| Weapon Enhancement | 660 | 70.2% | 48.9% | 40.6% |
| **30-39 Years of Age** | | % | % | % |
| **Weapon Enhancement** | | | | |
| No Weapon Enhancement | 7,509 | 53.0% | 33.7% | 25.8% |
| Weapon Enhancement | 1,014 | 57.7% | 35.2% | 27.8% |
| **40-49 Years of Age** | | % | % | % |
| **Weapon Enhancement** | | | | |
| No Weapon Enhancement | 5,356 | 42.6% | 26.4% | 20.2% |
| Weapon Enhancement | 538 | 48.9% | 30.5% | 24.7% |
| **50-59 Years of Age** | | % | % | % |
| **Weapon Enhancement** | | | | |
| No Weapon Enhancement | 2,747 | 26.7% | 14.2% | 11.1% |
| Weapon Enhancement | 222 | 27.9% | 15.8% | 12.2% |
| **60 Years of Age or Older** | | % | % | % |
| **Weapon Enhancement** | | | | |
| No Weapon Enhancement | 1,140 | 16.4% | 9.2% | 6.6% |
| Weapon Enhancement | 64 | 17.2% | 9.4% | 9.4% |

While states have improved the completeness of criminal history records, a recent federal study found significant gaps in reporting of dispositions following an arrest. Such gaps occur in the criminal records used in this report, and lead to an undercounting of reconvictions, since missing dispositions are treated herein as the absence of reconviction and reincarceration. *See* U.S. Government Accountability Office, Criminal History Records: Additional Actions Could Enhance the Completeness of Records Used for Employment-Related Background Checks (February 2015), http://www.gao.gov/products/GAO-15-162.

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT.  The numbers in the table represent the total number of offenders in each grouping, not the total number of offenders that recidivated. The total number of offenders in each grouping may not add to the total study group because of missing information.



Part Eight:
**APPENDIX**

<h3 style="text-align:center;color:#c00;">Recidivism Rates of Recidivism Study Offenders by Criminal History Category and Age at Release</h3>

| | N | Rearrest % | Reconviction % | Reincarceration % |
|---|---|---|---|---|
| **Total** | 25,386 | 49.3% | 31.7% | 24.7% |
| **Under 30 Years of Age** | | | | |
| **Criminal History Category** | | | | |
| CHC I | 3,771 | 53.0% | 34.1% | 25.4% |
| CHC II | 895 | 70.1% | 47.2% | 35.5% |
| CHC III | 1,095 | 79.5% | 56.7% | 46.5% |
| CHC IV | 568 | 86.3% | 66.9% | 57.4% |
| CHC V | 244 | 90.6% | 73.8% | 66.0% |
| CHC VI | 214 | 89.7% | 72.9% | 61.7% |
| **30-39 Years of Age** | | % | % | % |
| **Criminal History Category** | | | | |
| CHC I | 3,890 | 35.3% | 19.6% | 12.9% |
| CHC II | 1,091 | 55.8% | 32.9% | 23.1% |
| CHC III | 1,371 | 63.7% | 40.2% | 31.5% |
| CHC IV | 835 | 73.5% | 47.1% | 39.8% |
| CHC V | 483 | 79.9% | 59.2% | 51.6% |
| CHC VI | 803 | 84.6% | 63.5% | 54.8% |
| **40-49 Years of Age** | | % | % | % |
| **Criminal History Category** | | | | |
| CHC I | 3,135 | 25.9% | 14.0% | 9.4% |
| CHC II | 674 | 47.2% | 26.9% | 18.7% |
| CHC III | 746 | 54.0% | 33.0% | 24.5% |
| CHC IV | 398 | 72.4% | 49.0% | 40.0% |
| CHC V | 282 | 71.3% | 46.5% | 39.4% |
| CHC VI | 626 | 80.2% | 59.1% | 51.9% |
| **50-59 Years of Age** | | % | % | % |
| **Criminal History Category** | | | | |
| CHC I | 1,877 | 16.1% | 8.1% | 5.5% |
| CHC II | 316 | 30.1% | 13.6% | 9.5% |
| CHC III | 292 | 38.4% | 19.9% | 17.8% |
| CHC IV | 153 | 51.6% | 32.7% | 28.1% |
| CHC V | 92 | 58.7% | 32.6% | 29.4% |
| CHC VI | 225 | 64.9% | 40.0% | 33.8% |
| **60 Years of Age or Older** | | % | % | % |
| **Criminal History Category** | | | | |
| CHC I | 876 | 11.3% | 5.9% | 4.1% |
| CHC II | 106 | 22.6% | 12.3% | 9.4% |
| CHC III | 106 | 25.5% | 16.0% | 11.3% |
| CHC IV | 41 | 46.3% | 29.3% | 19.5% |
| CHC V | 18 | 44.4% | 27.8% | 22.2% |
| CHC VI | 53 | 37.7% | 22.6% | 20.8% |

While states have improved the completeness of criminal history records, a recent federal study found significant gaps in reporting of dispositions following an arrest. Such gaps occur in the criminal records used in this report, and lead to an undercounting of reconvictions, since missing dispositions are treated herein as the absence of reconviction and reincarceration. *See* U.S. Government Accountability Office, Criminal History Records: Additional Actions Could Enhance the Completeness of Records Used for Employment-Related Background Checks (February 2015), http://www.gao.gov/products/GAO-15-162.

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The numbers in the table represent the total number of offenders in each grouping, not the total number of offenders that recidivated. The total number of offenders in each grouping may not add to the total study group because of missing information.

**Recidivism Rates of Recidivism Study Offenders by Sentence Type and Age at Release**

| | N | Rearrest % | Reconviction % | Reincarceration % |
|---|---|---|---|---|
| **Total** | 25,386 | 49.3% | 31.7% | 24.7% |
| **Under 30 Years of Age** | | | | |
| Sentence Type | | | | |
| Probation or Fine Only | 1,039 | 51.5% | 34.2% | 21.6% |
| Probation and Confinement | 341 | 55.4% | 34.6% | 23.8% |
| Prison/Confinement Split | 261 | 53.6% | 34.1% | 25.3% |
| Prison Only | 5,144 | 68.6% | 48.3% | 39.5% |
| **30-39 Years of Age** | | % | % | % |
| Sentence Type | | | | |
| Probation or Fine Only | 989 | 35.5% | 20.7% | 11.8% |
| Probation and Confinement | 302 | 44.7% | 27.8% | 14.9% |
| Prison/Confinement Split | 244 | 41.8% | 25.4% | 16.0% |
| Prison Only | 6,971 | 56.9% | 36.3% | 28.9% |
| **40-49 Years of Age** | | % | % | % |
| Sentence Type | | | | |
| Probation or Fine Only | 835 | 27.7% | 16.9% | 9.1% |
| Probation and Confinement | 282 | 26.6% | 14.9% | 11.0% |
| Prison/Confinement Split | 268 | 30.2% | 17.2% | 11.2% |
| Prison Only | 4,501 | 47.9% | 29.9% | 23.8% |
| **50-59 Years of Age** | | % | % | % |
| Sentence Type | | | | |
| Probation or Fine Only | 504 | 18.9% | 8.9% | 5.2% |
| Probation and Confinement | 179 | 19.0% | 10.6% | 7.3% |
| Prison/Confinement Split | 140 | 22.9% | 13.6% | 7.1% |
| Prison Only | 2,145 | 29.6% | 15.9% | 13.2% |
| **60 Years of Age or Older** | | % | % | % |
| Sentence Type | | | | |
| Probation or Fine Only | 246 | 15.0% | 10.2% | 6.5% |
| Probation and Confinement | 87 | 9.2% | 4.6% | 3.5% |
| Prison/Confinement Split | 60 | 11.7% | 5.0% | 3.3% |
| Prison Only | 811 | 18.0% | 9.7% | 7.4% |

While states have improved the completeness of criminal history records, a recent federal study found significant gaps in reporting of dispositions following an arrest. Such gaps occur in the criminal records used in this report, and lead to an undercounting of reconvictions, since missing dispositions are treated herein as the absence of reconviction and reincarceration. *See* U.S. Government Accountability Office, Criminal History Records: Additional Actions Could Enhance the Completeness of Records Used for Employment-Related Background Checks (February 2015), http://www.gao.gov/products/GAO-15-162.

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT.  The numbers in the table represent the total number of offenders in each grouping, not the total number of offenders that recidivated. The total number of offenders in each grouping may not add to the total study group because of missing information.



Part Eight:
**APPENDIX**

### Recidivism Rates of Recidivism Study Offenders by Length of Federal Sentence and Age at Release

| | N | Rearrest % | Reconviction % | Reincarceration % |
|---|---|---|---|---|
| **Total** | 25,386 | 49.3% | 31.7% | 24.7% |
| **Under 30 Years of Age** | | | | |
| **Length of Federal Sentence** | | | | |
| Up to 6 Months | 294 | 52.7% | 34.7% | 26.2% |
| 6 to 11 Months | 264 | 61.4% | 43.9% | 31.8% |
| 12 to 23 Months | 1,204 | 69.2% | 48.6% | 40.3% |
| 24 to 59 Months | 2,457 | 68.4% | 48.8% | 40.3% |
| 60 to 119 Months | 995 | 71.4% | 47.8% | 38.9% |
| 120 Months or More | 185 | 68.1% | 48.1% | 39.5% |
| **30-39 Years of Age** | | % | % | % |
| **Length of Federal Sentence** | | | | |
| Up to 6 Months | 278 | 42.5% | 25.5% | 16.2% |
| 6 to 11 Months | 197 | 54.8% | 32.0% | 26.9% |
| 12 to 23 Months | 1,077 | 52.8% | 34.6% | 27.1% |
| 24 to 59 Months | 2,647 | 56.9% | 36.8% | 29.5% |
| 60 to 119 Months | 1,903 | 58.7% | 37.2% | 29.4% |
| 120 Months or More | 1,110 | 58.5% | 36.0% | 29.4% |
| **40-49 Years of Age** | | % | % | % |
| **Length of Federal Sentence** | | | | |
| Up to 6 Months | 273 | 28.9% | 17.6% | 11.4% |
| 6 to 11 Months | 190 | 45.8% | 23.7% | 16.8% |
| 12 to 23 Months | 793 | 41.5% | 25.5% | 21.8% |
| 24 to 59 Months | 1,734 | 47.6% | 29.1% | 22.4% |
| 60 to 119 Months | 1,049 | 50.3% | 32.6% | 25.6% |
| 120 Months or More | 727 | 52.8% | 34.4% | 28.6% |
| **50-59 Years of Age** | | % | % | % |
| **Length of Federal Sentence** | | | | |
| Up to 6 Months | 147 | 20.4% | 12.2% | 7.5% |
| 6 to 11 Months | 69 | 33.3% | 17.4% | 11.6% |
| 12 to 23 Months | 399 | 24.3% | 16.0% | 13.0% |
| 24 to 59 Months | 852 | 29.8% | 15.1% | 12.6% |
| 60 to 119 Months | 446 | 31.8% | 16.1% | 13.0% |
| 120 Months or More | 370 | 32.4% | 17.8% | 15.7% |
| **60 Years of Age or Older** | | % | % | % |
| **Length of Federal Sentence** | | | | |
| Up to 6 Months | 55 | 20.0% | 12.7% | 9.1% |
| 6 to 11 Months | 40 | 15.0% | 15.0% | 7.5% |
| 12 to 23 Months | 171 | 12.3% | 6.4% | 5.3% |
| 24 to 59 Months | 321 | 19.0% | 9.4% | 7.5% |
| 60 to 119 Months | 155 | 17.4% | 9.0% | 6.5% |
| 120 Months or More | 129 | 20.9% | 10.9% | 8.5% |

While states have improved the completeness of criminal history records, a recent federal study found significant gaps in reporting of dispositions following an arrest. Such gaps occur in the criminal records used in this report, and lead to an undercounting of reconvictions, since missing dispositions are treated herein as the absence of reconviction and reincarceration. *See* U.S. Government Accountability Office, Criminal History Records: Additional Actions Could Enhance the Completeness of Records Used for Employment-Related Background Checks (February 2015), http://www.gao.gov/products/GAO-15-162.

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The numbers in the table represent the total number of offenders in each grouping, not the total number of offenders that recidivated. The total number of offenders in each grouping may not add to the total study group because of missing information.

**Recidivism Rates for Federal and State Prisoners by Age at Release: Five Year Post-Release**

|  | N | Rearrest % | Reconviction % | Reincarceration % |
|---|---|---|---|---|
| **24 Years or Younger** |  |  |  |  |
| **Federal or State Prisoners** |  |  |  |  |
| Federal Prisoners | 1,916 | 63.2% | 42.9% | 35.1% |
| State Prisoners | N/A | 84.1% | N/A | N/A |
| **25 to 29 Years** |  | % | % | % |
| **Federal or State Prisoners** |  |  |  |  |
| Federal Prisoners | 3,489 | 57.6% | 34.9% | 28.2% |
| State Prisoners | N/A | 80.3% | N/A | N/A |
| **30 to 34 Years** |  | % | % | % |
| **Federal or State Prisoners** |  |  |  |  |
| Federal Prisoners | 3,966 | 50.3% | 28.5% | 22.2% |
| State Prisoners | N/A | 77.0% | N/A | N/A |
| **35 to 39 Years** |  | % | % | % |
| **Federal or State Prisoners** |  |  |  |  |
| Federal Prisoners | 3,249 | 44.5% | 24.4% | 19.7% |
| State Prisoners | N/A | 78.1% | N/A | N/A |
| **40 Years or Older** |  | % | % | % |
| **Federal or State Prisoners** |  |  |  |  |
| Federal Prisoners | 7,925 | 32.5% | 17.3% | 13.6% |
| State Prisoners | N/A | 69.2% | N/A | N/A |

While states have improved the completeness of criminal history records, a recent federal study found significant gaps in reporting of dispositions following an arrest. Such gaps occur in the criminal records used in this report, and lead to an undercounting of reconvictions, since missing dispositions are treated herein as the absence of reconviction and reincarceration. *See* U.S. Government Accountability Office, Criminal History Records: Additional Actions Could Enhance the Completeness of Records Used for Employment-Related Background Checks (February 2015), http://www.gao.gov/products/GAO-15-162.

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT and Bureau of Justice Statistics, *Recidivism of Prisoners Released in 30 States* (2005).

The Effects of Aging on Recidivism Among Federal Offenders   | A-47